**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| ALEXIS MORGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>          v.<br><br>DEMERT BRANDS, LLC,<br><br>                    Defendant. | **Case No. ___-cv-___**<br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

      Plaintiff Alexis Morgan ("Morgan" or "Plaintiff"), individually and on behalf of all others similarly situated, respectfully offers the following for her Complaint against DeMert Brands, LLC ("DeMert," "NYM," or "Defendant") and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## <u>NATURE OF THE ACTION</u>

      1.      Plaintiff bring this class action lawsuit on behalf of herself, and all similarly situated consumers ("Class Members") who purchased for normal household use DeMert dry shampoo aerosol products that are defective because they contain benzene, and which were formulated, designed, manufactured, marketed, advertised, distributed, and sold by DeMert (the "Products" or the "NYM Dry Shampoos"). These products include Not Your Mother's-branded dry shampoo aerosol products (including Not Your Mother's Clean Freak Refreshing Dry Shampoo – Original; Not Your Mother's Clean Freak Refreshing Dry Shampoo – Unscented; Not Your Mother's Beach

Babe Texturizing Shampoo – Toasted Coconut; Not Your Mother's Triple Threat Brunette Shampoo – Hint of Brunette Tinted Powder; Not Your Mother's Plump for Joy Body Building Dry Shampoo Orange, or Not Your Mother's Blonde Moment Dry Shampoo Hint of Blonde Tinted Powder). Each of the Products is manufactured, distributed, and sold by DeMert to consumers across the United States both in retail establishments and online, including in South Carolina where Plaintiff resides.

2.      The Products are defective because each contains significant amounts of the chemical benzene, a known human carcinogen that offers no therapeutic dry shampoo benefit; yet despite the presence of benzene, DeMert represents that the Products are safe and effective for their intended use.

3.      Benzene is known to cause cancer in humans. Long-term exposure to this chemical causes harmful effects on the bone marrow, a decrease in red blood cells leading to anemia, and excessive bleeding that can affect the immune system, leading to an increased chance of infection.

4.      The FDA instructs that there is no safe level of benzene, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."[1]

5.      FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm").[2] In any event, the NYM Products' benzene concentration far exceeds even this 2ppm ceiling. The NYM Dry Shampoo tested had benzene concentrations ranging from 4.46ppm to 158ppm, nearly 80 times the FDA concentration limit of 2ppm.

---

[1] FDA, Q3C–2017 Tables and List Guidance for Industry (dated June 2017, available at: https://www.fda.gov/media/71737/download, last viewed on December 22, 2021).
[2] *Id.*

6.      Other manufacturers formulate, produce, and sell non-defective dry shampoo aerosol products with formulations that do not include the use of benzene, evidence that its use in DeMert's Products is demonstrably avoidable. Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

7.      At the time of their purchases, DeMert did not notify Plaintiff and similarly situated consumers of the Products' benzene contamination through its product labels, the ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal law.

8.      Over the course of several years, DeMert has gained the trust of consumers with its NYM product line, who reasonably believed that its products, including the defective Products at issue, are made with quality materials, and can be used safely as intended; yet these Products were not safe. Independent testing of the Products shows them to be adulterated with benzene.

9.      Because Plaintiff and Class Members purchased worthless and, worse, they purchased and used Products that are dangerous to their health, they have suffered losses. Plaintiff seeks damages and equitable remedies on behalf of herself and the proposed Classes, defined herein.

## PARTIES

### A. Plaintiff

10.      Plaintiff Alexis Morgan is a resident and citizen of Lynchburg, South Carolina who purchased and used NYM Dry Shampoo Products within the relevant time period.

### B. Defendant

11.      Defendant DeMert United States, Inc. is a Florida limited liability company headquartered at 15402 N. Nebrasks Ave. #102, Lutz, Florida 33549. DeMert launched the Not Your Mother's brand in 2010, and at all times relevant to this lawsuit, Defendant has owned,

advertised, marketed, manufacture, and sold the Not Your Mother's brand through the United States and the State of South Carlina. The Products, including the adulterated Products purchased by Plaintiff and members of the proposed class, are available at retail stores throughout South Carolina and the United States.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over Defendant because they have substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and because they purposely availed themselves of the laws of the United States and South Carolina, including in this District, and/or has caused its products to be disseminated in this District.

14.    Venue in this district is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiff Alexis Morgan resides in this District, a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, DeMert transacts business in this District, and has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

15.    DeMert is well-established for its bath and beauty products, including its NYM Dry Shampoo at issue here. On its website, it assures customer that, "the quality of our goods is truly our number one priority. We want all of our customers to feel like they are getting the highest quality beauty care products…"[3] Furthermore, DeMert assures customers on its website about its Not Your Mother's Products describing it as, "superior quality hair care line for tweens, teens, and young adults." [4]

16.    DeMert built its strong reputation and consumer trust for decades by manufacturing and selling brands that have typically been of high quality, and as a result, DeMert earns billions annually in revenue.

### The Products

17.    DeMert's NYM-branded products at issue in this lawsuit are dry shampoo aerosol used by consumers, including Plaintiff and similarly situated consumers, to absorb dirt, oil, and grease of your scalp without washing it.[5]

18.    The U.S. Food and Drug Administration ("FDA") classifies the Products as cosmetics and regulates dry shampoo. The DeMert Products fall under FDA regulations.

19.    On October 31, 2022, Valisure, an analytical pharmacy and consumer protection organization, petitioned the FDA to address the dangerous levels of benzene in dry shampoos

---

[3] https://www.demertbrands.com/about  (last viewed November 07, 2022).
[4] *Id.*
[5] https://www.webmd.com/beauty/what-is-dry-shampoo (last viewed November 01, 2022).

based upon rigorous testing the organization had conducted on a number of dry shampoo products.[6] The next day, Valisure released the results of those tests.[7]

20.     In its laboratory testing, Valisure tested 148 batches from 34 brands of spray-on dry shampoo and found that 70% contained benzene and some samples analyzed directly from contaminated air suggest the sprayed product contained up to 170 times the conditionally restricted FDA concentration limit of 2 parts per million (ppm) (intended for certain drugs, when the use of benzene is unavoidable to produce a product that has a significant therapeutic advance).[8]

21.     In testing, Valisure found average concentrateions of benzene above the FDA concentration limit of 2ppm in 14 lots of NYM Dry Shampoos. Valisure's test results have already been confirmed by recalls of several dry shampoo products manufactured by Procter & Gamble and Unilever which were found to contain benzene. In contrast, Defendant DeMert has to date refused to voluntarily recall its Products adulterated with the dangerous carcinogen benzene.

22.     In particular, Valisure found benzene concentrations between two and eighty times higher than the FDA concentration limit.

**The Risks of Excessive Benzene in the Products**

23.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum.  The health hazards of benzene have been recognized for over one hundred years.

---

[6] https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf (last viewed November 01, 2022).

[7] https://www.valisure.com/valisure-newsroom/valisure-detects-benzene-in-dry-shampoo (last viewed November 01, 2022).

[8] *Id.*

24.     According to the National Toxicology Program ("NTP"), benzene is "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[9] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC").[10] Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[11]  As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on **sufficient evidence** of carcinogenicity in humans, **sufficient evidence** of carcinogenicity in experimental animals, and **strong** mechanistic evidence. . . . In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[12]

25.     The carcinogenic properties of benzene are well documented, as noted be the Centers for Disease Control and Prevention ("CDC").[13]

26.     The U.S. Department of Health and Human Services ("DHHS") has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene can cause leukemia, cancer of the blood-forming organs.

---

[9] Benzene, Report on Carcinogens, Fourteenth Edition, DEPT. OF HEALTH AND HUMAN SERVICES (Nov. 3, 2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf.
[10] *Benzene*, IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS,
Volume 120 (2018),
https://publications.iarc.fr/_publications/media/download/6043/20a78ade14e86cf076c3981a9a09
4f45da6d27cc.pdf.
[11] *Id.*
[12] *Id.* (emphasis in original).
[13] See CDC, Facts About Benzene (2018),
https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last viewed November 01, 2022).

27.    Long-term exposure to benzene additionally causes harmful effects on the bone marrow and can cause a decrease in red blood cells, leading to anemia. It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.

28.    Due to these significant health risks, the World Health Organization and the International Agency for Research on Cancer classify benzene as a Group 1 compound that is "carcinogenic to humans."[14]

29.    The FDA regulates dry shampoos to ensure they meet safety and effectiveness standards. As an FDA-regulated product, dry shampoos must pass certain tests before they are sold.

30.    The FDA classifies Benzene as a Class 1 compound. According to FDA guidance: "Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, and drug products, because of their unacceptable toxicity or their deleterious environmental effect."[15]

**DeMert's Represents that the Products Are Safe and Can Be Trusted**

31.    On its website, DeMert assures customer that, "the quality of our goods is truly our number one priority. We want all of our customers to feel like they are getting the highest quality beauty care products..."[16] Furthermore, DeMert assures customers on its website about its Not Your Mother's Products describing it as, "superior quality hair care line for tweens, teens, and young adults." [17]

32.    Despite these representations by DeMert, DeMert's NYM-branded dry shampoo

---

[14] https://www.cancer.org/healthy/cancer-causes/chemicals/benzene.html#:~:text=The%20International%20Agency%20for%20Research,acute%20myeloid%20leukemia%20(AML)  (last viewed November 01, 2022).
[15] https://www.fda.gov/media/71737/download (last visited December 14, 2021).
[16] https://www.demertbrands.com/about  (last viewed November 07, 2022).
[17] *Id.*

aerosol products do not list benzene among the active or inactive ingredients for its NYM-branded dry shampoo products anywhere on its website[18], and nothing on the Product labels (shown below) warns that the Products contain benzene.

---

[18] See Generally  https://notyourmothers.com/collections/shop-all/product-type:dry-shampoo (last viewed November 07, 2022).



19

**INGREDIENTS:** ISOBUTANE, PROPANE, SD ALCOHOL 40-B, ALUMINUM STARCH OCTENYLSUCCINATE, ISOPROPYL MYRISTATE, SILICA, FRAGRANCE (PARFUM).

**WARNING: EXTREMELY FLAMMABLE.**
Do not spray on a naked flame or any incandescent materials. Keep away from sources of ignition. No smoking. Pressurized dispenser. Protect from sunlight and do not expose to temeratures above 120º F (50º C). Do not pierce or burn even after use. Avoid spraying in eyes. Avoid spraying in close contact with unprotected skin. Use only as directed. Intentional misuse by deliberately concentrating and inhaling the contents can be harmful or fatal.
**KEEP OUT OF REACH FROM CHILDREN.**

 330mL (198g)
**EXTREMELY FLAMMABLE**

**nymbrands.com**
Dist. by DeMert Brands, Inc.
Lutz, FL 33549.
1-813-903-0434
Dateline Imports P/L,
Banksmeadow, NSW, Australia.

©2018. The graphic hair design is a registered trademark of DeMert Brands, Inc.

20

10

**DeMert's Misrepresentations and Omissions are Actionable**

33.     Defendant's failure to control for benzene contamination and its sale of its adulterated products constitutes actionable fraud.

34.     Plaintiff and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and contain elevated levels of benzene, and Defendant failed to warn consumers of this fact. Such illegally sold products are worthless and have no value. *See Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019).

35.     Plaintiff and Class members bargained for a dry shampoo product free of contaminants and dangerous substances and were deprived the basis of their bargain when Defendant sold them a product containing the dangerous substance benzene, which rendered the Products unmerchantable and unfit for use.

36.     As the Products expose consumers to elevated levels of benzene, the Products are not fit for use by humans. Plaintiff is further entitled to damages for the injury sustained in being exposed to elevated levels of acutely toxic benzene, damages related to Defendant's conduct, and injunctive relief.

37.     Plaintiff has standing to represent members of the putative Classes because there is sufficient similarity between the specific products purchased by the Plaintiff and the other Products not purchased by the Plaintiff.  Specifically, each and every one of DeMert's Products (i) are marketed in substantially the same way – as "Dry Shampoo"—and (ii) fail to include labeling

---

[19] https://notyourmothers.com/collections/shop-all/products/original-dry-shampoo (last viewed November 07, 2022.
[20] https://www.walmart.com/ip/Not-Your-Mother-s-Clean-Freak-Refreshing-Dry-Shampoo-Spray-Original-7-oz/16777427 (last viewed November 07, 2022).

indicating to consumers that the Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of all of the Products' labels are substantially the same.

38.     Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the presence of benzene, a carcinogenic and toxic chemical impurity.

39.     Plaintiff and the putative Class suffered economic damages due to Defendant's misconduct (as set forth below), and they seek injunctive relief and restitution for the full purchase price of the Product(s) they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

40.     Plaintiff brings this action on behalf of themselves and the Classes for equitable relief and to recover damages and restitution for: violation of the consumer protection statutes invoked herein; fraudulent concealment; and unjust enrichment.

**Defendant's Marketing and Sale of the Products Violates Federal Law**

41.     Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. §45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

42.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

43.     Section 12 of the FTC Act, 15 U.S.C. §52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. §52, the Products are "cosmetics" as defined in Section 15 (e) of the FTC Act,

15 U.S.C. § 55 (e). Under these provisions, companies must have a reasonable basis for making objective product claims.

44. The Federal Food, Drug, and Cosmetic Act ("FD&C Act") prohibits "The introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

45. DeMert has represented that the ingredients in its Products are safe, effective and are not adulterated with benzene. However, these representations are false, deceptive, and misleading as the Products contain elevated levels of benzene. The making of such misrepresentations by DeMert constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§45(a) and 52(b).

46. As alleged herein, DeMert has violated the FD&C Act and consumer protection statutes.

47. Plaintiff and the Classes have suffered injury in fact and have lost money as a result of DeMert's unlawful sale of the Products. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known they were adulterated and/or misbranded.

48. DeMert engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding benzene contamination affecting the Products.

49. Plaintiff and the Classes have suffered injury in fact and have lost money as a result of DeMert's unlawful sale of the Products. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known of the material omissions of material facts regarding the presence of Benzene. Accordingly, Plaintiff and the Classes suffered injury in fact and lost money as a result of DeMert's misleading representations and omissions and did not receive the benefit-of-the- bargain.

50.    Plaintiff and the Class's injury is underscored by the fact that numerous other products offering the same therapeutic benefit at comparable prices exist that are not prone to benzene contamination.

51.    Plaintiff and the Class may be harmed again in the future because they want to purchase the Products in the future; however, without injunctive relief Plaintiff would not be able to know or trust that DeMert will truthfully and legally label the Products and would be likely to be misled again.

## PLAINTIFF'S FACTUAL ALLEGATIONS

52.    Plaintiff Alexis Morgan purchased for personal use DeMert's NYM-branded 7 oz. "Clean Freak Refreshing Dry Shampoo" near her residence in Lynchburg, South Carolina.

53.    Nowhere on the Products' packaging did DeMert disclose that the Products contain benzene at the time of purchase.

54.    If Plaintiff Alexis Morgan had been aware of the existence of benzene in the Products, she would not have purchased the Products or would have paid significantly less.

55.    As a result of DeMert's actions, Plaintiff Alexis Morgan has incurred damages, including economic damages.

56.    If the DeMert's NYM-branded Dry Shampoo Products were reformulated to be safe and without benzene, Plaintiff Alexis Morgan would choose to purchase the Products in the future.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on her own behalf and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.

**South Carolina Subclass:** All persons within South Carolina who purchased the Products within the applicable statute of limitations.

58.     The Nationwide Class and South Carolina Subclass shall collectively be referred to herein as the "Classes."

59.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

60.     Excluded from the Classes are governmental entities, DeMert, its officers, directors, affiliates, legal representatives, and employees.

61.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

62.     **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). This Class numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

63.     **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

        a.     whether DeMert's advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed by benzene concentrations in DeMert's Products;

        b.     whether DeMert made representations regarding the safety of the Products;

        c.     whether DeMert omitted material information regarding the safety of the

Products;

d.    whether DeMert's Products were merchantable;

e.    whether DeMert violated the consumer protection statutes invoked herein;

f.    whether DeMert's conduct alleged herein was fraudulent; and

g.    whether DeMert was unjustly enriched by sales of the Products.

64.    The questions set forth above predominate over any questions affecting only individual persons concerning sales of DeMert's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiff's claims.

65.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of those of the Class in that the Class members uniformly purchased DeMert's Products and were subjected to DeMert's uniform merchandising materials and representations at the time of purchase.

66.    **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for DeMert, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

67.     **Adequacy** – Federal Rule of Civil Procedure 23(a)(4).  Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

68.     **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for DeMert. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

69.     **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). DeMert has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin DeMert from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended.

70.     Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the DeMert;

b.     The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.     DeMert has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## **CAUSES OF ACTION**

## **COUNT I**

**Breach of Express Warranty**
**(On Behalf of the National Class and, alternatively, the Subclass)**

71.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

72.     Plaintiff, and each member of the National Class, formed a contract with Defendant at the time Plaintiff and each member of the National Class purchased the Products.

73.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

74. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the National Class and Defendant.

75. As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

76. Plaintiff and the members of the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

77. Defendant breached express warranties about the Products and their qualities because Defendant's Product contained the harmful chemical benzene at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

78. Plaintiff and each of the members of the National Class would not have purchased the Products had they known the true nature of the harmful chemicals in the Product.

79. As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT II

### Breach of Implied Warranty
### (On Behalf of the National Class and, alternatively, the Subclass)

80. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

81. DeMert is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

82. The Products are "goods" under the relevant laws, and DeMert knew or had reason to know of the specific use for which the Products, as goods, were purchased.

83.    DeMert entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

84.    The implied warranty of merchantability included with the sale of each Product means that DeMert guaranteed that the Products would be fit for the ordinary purposes for which dry shampoos are used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between DeMert, and Plaintiff and the Class Members.

85.    DeMert breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably reliable and safe use for absorbing dirt, oil, and grease from the scalp without washing it because the Products contain benzene, a known and dangerous carcinogen. Therefore, the Products are not fit for their particular purpose of safely preventing or masking body odor.

86.    DeMert's warranty expressly applies to the purchaser of the Products, creating privity between DeMert and Plaintiff and Class Members.

87.    However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of DeMert's warranties and its sale through retailers. DeMert's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. DeMert's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

88.    DeMert has been provided sufficient notice of its breaches of implied warranties associated with the Products. DeMert was put on constructive notice of its breach through its review of consumer complaints and other reports, including the Valisure testing report discussed throughout this complaint, and upon information and belief through its own product testing.

89.     Had Plaintiff, Class Members, and the consuming public known that the Products were contaminated with benzene, they would not have purchased the Products or would have paid less for them.

90.     As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT III**

**Fraudulent Concealment**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

91.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

92.     Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 57 (the "Classes").

93.     Defendant had a duty to disclose material facts to Plaintiff and the Classes given their relationship as contracting parties and intended users of the Products. Defendant also had a duty to disclose material facts to Plaintiff and the Classes, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for human use, because Defendant had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

94.     Defendant possessed knowledge of these material facts. Since at least mid-2020, numerous recalls put Defendant on notice that adulterated and misbranded products were being investigated for contamination with carcinogens, including benzene.

95.     During this time, Plaintiff, and members of the Classes, were using the Products without knowing they contained elevated levels of benzene.

96.     Defendant failed to discharge its duty to disclose these materials facts.

97.     In so failing to disclose these material facts to Plaintiff and the Classes, Defendant intended to hide from Plaintiff and the Classes that they were purchasing and consuming the Products with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

98.     Plaintiff and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they contained elevated levels of benzene.

99.     As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Classes, suffered damages in the amount of monies paid for the defective Products.

100.     As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## COUNT IV

### Unjust Enrichment
### (On Behalf of the Nationwide Class)

101.     Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

102.     Plaintiff, and the other members of the Nationwide Class, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products.

103.     Defendant voluntarily accepted and retained this benefit.

104.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

105.     Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff, and the other members of the Nationwide Class, because Plaintiff, and members of the Nationwide Class, purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

106.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Nationwide Class, because they would have not purchased the Products had they known the true facts.

107.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Nationwide Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## COUNT V

**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

108.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

109.     Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 57 (the "Classes").

110.     Defendants are merchants engaging in the sale of goods to Plaintiff and the Classes.

111.     There was a sale of goods from Defendants to Plaintiff and the Classes.

112.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products ("Products" as Pled in Paragraph 1) Defendants impliedly warranted to Plaintiff and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiff and the Classes to use as dry shampoo.

113.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, and did not conform to Defendants' affirmations of fact and promises as use of the Products was accompanied by the risk of adverse health effects that do not conform to the packaging.

114.     Defendants breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiff and the Classes a product that Defendants knew, or should have known, would expose Plaintiff and the Classes to significant health risks, thus meaning Defendants knew that the Products were not fit for their intended purpose.

115.     Defendants were on notice of this breach, as they were made aware of the adverse health effects accompanying use of their Products.

116.     Plaintiff and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

117.     Plaintiff and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

118.     The Products were not altered by Plaintiff or the members of the Classes.

119.     Plaintiff and members of the Classes used the Products in the ordinary manner in which such devices were intended to be used.

120.    The Products were defective when they left the exclusive control of Defendant.

121.    The Products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff and members of the Classes did not receive the goods that they bargained for.

122.    Plaintiff and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

123.    As a result of the defect in the Products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective device, loss of use of the device and other related damage.

124.    Defendants breached the implied warranty of merchantability to the Plaintiff and Class members.

125.    Thus, Defendants' attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

126.    Plaintiff and Class members have been damaged by Defendants' breach of the implied warranties.

127.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VI

**Strict Liability – Failure to Warn**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

128.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

129.     Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 57 (the "Classes").

130.     Defendants had a duty to warn Plaintiff and the Class members regarding the Defect and the true risks associated with the Products.

131.     Defendants were in a superior position to know of the Defect.

132.     Defendants failed to provide adequate warnings regarding the risks of the Products.

133.     Defendants had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings.

134.     Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendants instead chose to actively conceal this knowledge from the public.

135.     Plaintiff and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

136.     This Defect proximately caused Plaintiff's and Class members' damages.

137.     The Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII

### Strict Liability – Design Defect
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

138.     Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

139.     Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 57 (the "Classes").

140.     Defendants had a duty to warn Plaintiff and the Class members regarding the Defect and the true risks associated with the Products.

141.     The design of the Products was defective and unreasonably dangerous.

142.     Exposure to benzene while Plaintiff and members of the Classes used the Products, caused exposure to materials with toxic and carcinogenic effects.

143.     The design of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

144.     The dangers of the benzene in the Products outweighed the benefits and rendered the Products unreasonably dangerous.

145.     There are other Products and other similar dry shampoos that do not use benzene, meaning that there were other means of production available to Defendants.

146.     The Products were unreasonably unsafe, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

147.     The Products did not perform as an ordinary consumer would expect.

148.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VIII

### Negligent Failure to Warn
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

149.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

150.    Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 57 (the "Classes").

151.    Defendants owed Plaintiff and Class members a duty of care and to warn of any risks associated with the Products.

152.    Defendants' breach of duty caused Plaintiff and Class members economic damages and injuries in the form of exposure to benzene, a material with toxic and carcinogenic effects.

153.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT IX

### Negligent Design Defect
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

154.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

155.    Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 63 (the "Classes").

156.    Defendant owed Plaintiff and the Classes a duty to design the Products in a

reasonable manner.

157.    The design of the Products was defective and unreasonably dangerous, causing exposure to materials with toxic and carcinogenic effects.

158.    The design of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

159.    There are other dry shampoos that do not use benzene.

160.    The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

161.    The Products did not perform as an ordinary consumer would expect.

162.    The Defendants' negligent design of the Products was the proximate cause of damages to the Plaintiff and the Class members.

163.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## **COUNT X**

### **Violation of the Magnuson-Moss Act, 15 U.S.C. § 2301**
### **(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

164.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

165.    Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 57 (the "Classes").

166.    The Magnuson-Moss Act contains, in pertinent part, the following definitions:

(1) The term "consumer product" means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)

(3) The term "consumer" means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

(4) The term "supplier" means any person engaged in the business of making a consumer product directly or indirectly available to consumers.

(5) The term "warrantor" means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty.

(7) The term "implied warranty" means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.

15 U.S.C.A. § 2301.

167.     Plaintiff and members of the Classes are "consumers". 15 U.S.C. § 2301(3).

168.     Defendant is a "supplier" and "warrantor." 15 U.S.C. § 2301(4) and (5).

169.     The Products are consumer products. 15 U.S.C. § 2301(1).

170.     This is a claim arising out of state law, per 15 U.S.C. § 2301 (7).

171.     Defendant impliedly warranted that the Products would be free of defects at the time of delivery, and the Products carried an implied warranty of merchantability.

172.     Defendant breached its warranties by offering for sale and selling the Products that were by design and construction defective and unsafe, thereby subjecting Class members who purchased the Products to damages and risks of loss and injury.

173.     Defendant has breached and continues to breach its written and implied warranties of safety, thereby damaging Plaintiff and the Classes, when their Products fail to perform as represented due to an undisclosed Defect.

174.     As a result of Defendant's continued breach of its warranties, Plaintiff and Class members have suffered damages.

175.     Plaintiff and the Classes seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, attorney's fees and costs, and any other relief to which Plaintiff and the Classes may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in his favor and against Defendant as follows:

A.     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B.     For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For injunctive relief as pleaded or as the Court may deem proper; and

H.     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated:  November 9, 2022,                    Respectfully submitted,

**POULIN | WILLEY | ANASTOPOULO, LLC**

BY: */s/ Paul Doolittle*
Paul Doolittle, Esq.
SC Attorney ID: 66490
Blake G. Abbott, Esq.
SC Attorney ID: 104423
32 Ann Street
Charleston, SC 29403
(P): (843) 614-8888
(F): (843) 494-5536
Email: pauld@akimlawfirm.com
Email: blake@akimlawfirm.com